# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Arnold, Appellant, *v.* Philadelphia & Reading R. R.

*Negligence—Railroads—" Stop, look and listen."*

Plaintiff, a young woman with good eyesight but somewhat deaf, was struck and injured by a train at a street crossing. There was evidence that the train was going at a high rate of speed, and had given no signal. Plaintiff's testimony, which was corroborated by other witnesses, was in effect that she stopped about two feet from the outside rail, and looked and listened. Hearing and seeing no train, she started across the tracks, and was struck just as she was clearing the outside rail on the second track about eighteen feet from the point where she stopped. The evidence was conflicting as to what distance a train could be seen from the point where she stopped ; one witness stated it to be one hundred and twenty feet, another three hundred feet. The evidence was also conflicting as to the speed of the train at the time of the accident. *Held* that the case was for the jury.

The court could not say, as an established fact, that she ought to have seen, or could have seen, this train where she stopped, and there have waited until it passed. Nor could the court say she ought to have stopped on the first track and again have looked, or in the space between the up and down tracks. Whether, after doing what care under the circumstances required before going upon the crossing, she crossed as care demanded when on it, could only be determined by the jury from all the evidence. By Mr. JUSTICE DEAN.

Argued March 7, 1894.   Appeal, No. 199, Jan. T., 1894, by plaintiff, Hannah S. Arnold, from judgment of C. P. Northampton Co., April T., 1893, No. 31, entering compulsory nonsuit.   Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.   Reversed.

Trespass for personal injuries.   Before REEDER, J.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was refusal to take off nonsuit.

*Wm. C. Loos,* for appellant, cited, on the question of compulsory nonsuit: Schum v. R. R., 107 Pa. 14 ; Ely v. Ry., 158 Pa. 237 ; Kohler v. R. R., 135 Pa. 357 ; Brown v. Barnes, 151 Pa. 562 ; R. R. v. Jones, 128 Pa. 308 ; Smith v. R. R., 158 Pa. 82 ; R. R. v. Garvey, 108 Pa. 369 ; R. R. v. Coon, 111 Pa. 430 ; R. R. v. Lyons, 29 Pa. 113 ; Ry. v. Kane, 5 Cent. R. 909 ; R. R. v. Weber, 76 Pa. 157 ; Weiss v. R. R., 79 Pa. 387 ; R. R. v. Weiss, 87 Pa. 447 ; R. R. v. White, 88 Pa. 327 ; Hyatt v. Johnston, 91 Pa. 196 ; Longenecker v. R. R., 105 Pa. 328 ; Kohler v. R. R., 125 Pa. 346 ; Smith v. R. R., 158 Pa. 82 ; R. R. v. Ogier, 35 Pa. 60 ; R. R. v. Hagan, 47 Pa. 244 ; R. R. v. Heileman, 49 Pa. 60 ; R. R. v. Ackerman, 74 Pa. 265.

On defendant's negligence : Childs v. R. R., 150 Pa. 76 , Ellis v. R. R., 138 Pa. 506 ; R. R. v. Lewis, 79 Pa. 44 ; R. R. v. Coon, 111 Pa. 430 ; R. R. v. Ackerman, 74 Pa. 265 ; R. R. v. Long, 75 Pa. 257 ; R. R. v. Hagan, 47 Pa. 244 ; Allen v. Willard, 57 Pa. 374 ; Hays v. Gallagher, 72 Pa. 136 ; Gillespie v. McGowan, 100 Pa. 144.

*Edward J. Fox, James W. Fox* with him, for appellee, cited, on the question of contributory negligence : Moore v. R. R., 108 Pa. 349 ; Meyers v. R. R., 150 Pa. 386 ; Carroll v. R. R., 12 W. N. 348 ; R. R. v. Bell, 122 Pa. 58 ; Marland v. R. R., 123 Pa. 487 ; R. R. v. Mooney, 126 Pa. 244 ; Hauser v. R. R., 147 Pa. 440 ; Ely v. Ry., 158 Pa. 233 ; R. R. v. Heileman, 49 Pa. 60 ; R. R. v. Beale, 73 Pa. 504 ; Aiken v. R. R., 130 Pa 380 ; Greenwood v. R. R., 124 Pa. 572 ; Urias v. R. R., 152 Pa. 326 ; Harris v. Ice Co., 153 Pa. 278 ; Brown v. Barnes, 151 Pa. 562.

On defendant's negligence: Newhard v. P. R. R., 153 Pa. 417 ; Urias v. R. R., 152 Pa. 326.

OPINION BY MR. JUSTICE DEAN, April 2, 1894:

The plaintiff, a young married woman, having no defect of sight but somewhat deaf, while attempting to walk over defendant's road, at a street crossing in South Bethlehem borough on October 12, 1892, was struck by the locomotive of defendant's passenger train and seriously injured. She brought suit against the company for damages, averring negligence on its part in running the train at a high rate of speed over the public streets of a town, with no warning of its approach to persons about to use the grade crossing.

The learned judge of the court below entered a compulsory nonsuit for these reasons as stated by him :

" It is admitted by the plaintiff's own witnesses that, at the place where she was struck, had she looked for a coming train, she could have seen it at a distance, according to one witness, of 120 feet, another said 180 feet, and 300 feet according to another witness, and another witness says that standing between the tracks she could have seen 400 feet. Therefore it is perfectly clear that she must have been guilty of negligence in stepping on that track and not looking, because if she had looked she could have seen the approaching train and gotten off the track. Therefore crossing the track in her condition, deaf, unable to hear as well as persons usually do, she was bound all the more to use her eyes."

The first point incumbent on plaintiff to establish was the negligence of defendant. The grade crossing was on the streets of a populous borough ; there were neither guard gates nor watchman at this crossing ; the train that struck her was on a down grade, and there was evidence that, at the time, it was running at a high rate of speed, and gave no warning of its approach by whistle or bell. It is not seriously questioned that there was evidence for the consideration of the jury as to absence of care according to the circumstances on part of defendant. Assuming then, as in reviewing a judgment of compulsory nonsuit we must assume, that the jury on the evidence would have found defendant was negligent, was the plaintiff guilty of negligence which contributed to bring about the acci-

dent? As before quoted, the court below thought she was; was it for the court or the jury, under the law and in view of this evidence, to answer this question?

Plaintiff and defendant both had the right to use this crossing; her right was subordinate to that of the railroad company; care did not require the company to stop before reaching the crossing and look out for travelers over it; it did require of her to stop and look out for trains. The duty of stopping, looking and listening before going into a known dangerous place is only the rule which the common sense of mankind has imposed upon itself—" Look where you are going." Now the plaintiff herself swears positively she stopped when about two feet from the outside rail, looked up and down the track and listened. In this statement she is corroborated by three witnesses, Harvey Lambert, Idah Kutte and William Unangst. So on this point there was evidence which necessarily was for the jury. That is, there was evidence tending to show she exhibited care according to the circumstances before venturing on the crossing. She was struck just as she was clearing the outside rail of the second track about eighteen feet from the point where she stopped, looked and listened. She testifies that, neither seeing nor hearing a train up or down the road, she hastened as fast as she could across, saw the train almost upon her when in the middle of the second track, and, before she could get off, was struck. There was conflicting evidence as to what distance a train could be seen from the point where she stopped to look; one witness states 120 feet, another 300 feet; there is also conflicting evidence as to the speed of the train at the time of the accident. But the court could not say, as an established fact, that she ought to have seen, or could have seen, this train where she stopped, and there have waited until it passed. Nor could the court say she ought to have stopped on the first track and again have looked, or in the space between the up and down tracks.

Whether, after doing what care under the circumstances required before going on the crossing, she crossed as care demanded when on it, could only be determined by the jury from all the evidence. It is not manifest that if this train were running at high rate of speed on a down grade, it could have been seen from where plaintiff stopped at the time she stopped; there-

fore, the rule laid down in Meyers v. R. R. Co., 150 Pa. 386, does not apply. In that case, the evidence was undisputed that a train could have been seen for half a mile in either direction; that being the established fact, it necessarily followed the plaintiff did not look.

The inference of the appellee, that the train must have been visible when plaintiff stopped, is based on these facts: That, moving at the rate of eight miles an hour, it would have moved less than 300 feet while she walked 18 feet. This assumes, first, what is disputed, that it could have been seen 300 feet distant, and second, what is disputed, that it was going at the slow rate of eight miles an hour. But take the distance at which the train could be seen at less than half of 300 feet, and the speed 30 to 40 miles an hour, of which there was much more than a scintilla of evidence, no such inference is warranted. True, the evidence of plaintiff was not definite and exact on either point, but the plaintiff, as is ruled in Ely v. Railway, 158 Pa. 233, has a right to go to the jury even when his own witnesses make contradictory statements. Taking all of the evidence offered by plaintiff, it was for the jury to say whether it disclosed a case of contributory negligence on her part, and not for the court.

The judgment is reversed and a procedendo awarded.

MR. JUSTICE GREEN and MR. JUSTICE FELL dissent.